[Cite as *Cagle v. Cagle*, 2022-Ohio-671.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEPHEN C. CAGLE, | : | APPEAL NO. C-210275 |
| | | TRIAL NO. DR1901034 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| LEAH M. CAGLE, | | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 9, 2022

*Keating Muething & Klekamp PLL, Adrienne J. Roach, Tiffany M. Evans* and *Paul R. Kerridge*, for Plaintiff-Appellee,

*M. Lynn Lampe* and *Stephen J. Otte*, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} This dispute involves two ex-spouses—defendant-appellant Leah M. Cagle ("Mother") and plaintiff-appellee Stephen C. Cagle ("Father")—debating Mother's right to access to their minor son's ("E.H.C.") health and scholastic records, along with her ability to attend medical and school-related appointments. The trial court granted an order restraining Mother's right to access certain records and barring her from attending certain events, finding that such a restraint furthered E.H.C.'s best interests under R.C. 3109.051(H)(1). On appeal, Mother challenges the trial court's factual findings and depicts the order as an abuse of discretion. Because we believe that the trial court's order constitutes a narrow restraint on Mother's rights that is grounded in well-founded concerns, we affirm the judgment of the trial court.

I.

{¶2} Mother and Father divorced in 2020, when E.H.C. was 15 years old. Per the divorce decree, Father is E.H.C.'s residential parent and legal custodian, while Mother has a right to parenting time at E.H.C.'s discretion (although Mother has not had parenting time with E.H.C. since June 2020).

{¶3} After the finalization of the divorce, Mother learned that E.H.C. was being treated for anxiety. Mother testified that she made numerous appointments with E.H.C.'s physician to discuss E.H.C.'s mental and physical health. During these appointments, Mother attempted to establish that E.H.C. faced considerable "danger" from sundry sources. Mother believed that E.H.C. was being exposed to high levels of noxious gasses when he visited nearby hockey rinks. She also complained that E.H.C., and his two pets, were ingesting toxic food and water, and that "GPS interference" impaired E.H.C.'s functioning.

{¶4} Eventually, Mother intruded in the middle of one of E.H.C.'s medical appointments. As E.H.C. and Father waited in the examination room, they learned that

2

Mother burst into the office. Father testified that E.H.C. did not want Mother to come back into the examination room. The physician's office accordingly did not allow Mother to see E.H.C., eventually contacting the police when she refused to depart. After police arrived, Mother left the building without having seen E.H.C.

{¶5} Mother apparently engaged in similar behavior with E.H.C.'s therapist, prompting that office to obtain a cease-and-desist order prohibiting her from appearing at E.H.C.'s appointments or contacting the office. In addition, Mother reached out on numerous occasions to E.H.C.'s school in an effort to obtain his records. Father testified that E.H.C. is concerned that Mother will appear at his school and cause a disruption akin to her interference at the physician's office.

{¶6} As a result of these episodes, in March 2021, Father filed a motion for an order limiting Mother's access to E.H.C.'s records and restraining her from interfering with medical or school-related activities. After the trial court held a hearing, and conducted an in camera interview of E.H.C., the court granted an order preventing Mother from (1) appearing, without written permission, at E.H.C.'s school, treatment provider, or place of employment when E.H.C. is likely to be present, and (2) harassing school, medical, therapeutic, or other personnel to obtain E.H.C.'s records. Mother now appeals that order.

II.

{¶7} Mother's sole assignment of error claims that the trial court should not have entered the order in question, challenging the trial court's factual findings and arguing that the order runs contrary to E.H.C.'s best interest.

{¶8} Under R.C. 3109.051(H)(1), a nonresidential parent enjoys a right to access their child's records, "unless the court determines that it would not be in the best interest of the child for the parent who is not the residential parent to have access to the records under those same terms and conditions." The trial court considers a variety of factors when

3

evaluating the best interest of the child. *See* R.C. 3109.04(F)(1). We review the trial court's decision to restrict a parent's access to the child's records for an abuse of discretion. *Martindale v. Martindale*, 4th Dist. Athens No. 18CA17, 2019-Ohio-3028, ¶ 95 ("As with other parenting issues, we review a trial court's decision regarding a parent's access to a child's records for an abuse of discretion."). As for the trial court's factual findings, "we * * * 'presume that the findings of the trier of fact are correct,' given the court's opportunity to view the witnesses and observe their demeanor." *Jindal Builders & Restoration Corp. v. Cincinnati Metro. Hous. Auth.*, 2020-Ohio-4043, 157 N.E.3d 279, ¶ 13 (1st Dist.), quoting *Lehigh Gas-Ohio L.L.C. v. Cincy Oil Queen City, L.L.C.*, 1st Dist. Hamilton No. C-130127, 2014-Ohio-2799, ¶ 44. "Accordingly, we afford due deference to the court as the finder of fact, evaluating whether 'some competent and credible evidence' supports the court's findings." *Jindal Builders & Restoration Corp.* at ¶ 13, quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 12 (8th Dist.).

{¶9} As a threshold matter, Father insists that we need not consider the merits of Mother's assignment of error because she failed to provide a transcript of the trial court's in camera interview of E.H.C. *See Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980) ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."). But because the record includes ample evidence supporting the trial court's decision, we find it unnecessary to resolve this issue and instead turn to the merits of Mother's appeal.

A.

{¶10} We begin with Mother's challenge to the trial court's factual findings. Mother first attacks the trial court's finding that she made appointments with E.H.C.'s pediatrician

to present evidence of what she considers abuse. She maintains that she never broached allegations of abuse during these appointments, instead merely relaying her concerns regarding her child's health. The physician's notes from her appointments, however, tell a different story. The physician's notes provide that "[Mother] has brought literature that she states is proof of abuse of her child by her ex-husband." Later, the physician's notes explain that "[Mother] believes that E.H.C. is in danger living with his father," and they characterize Mother as "paranoid." We see nothing in the record to cast doubt on the credibility of these notes and, thus, the trial court could find that Mother made appointments with E.H.C.'s pediatrician to present (unsubstantiated) allegations of abuse.

{¶11} Next, Mother contests the trial court's finding that she created "chaotic scenes" in E.H.C.'s life for years. Although she concedes this might be true for 2021, she disputes the existence of any evidence that this conduct has unfolded across several years. In response, Father clarifies that he does not claim that the conduct persisted for years, but rather that Mother's pattern of behavior nevertheless supports the trial court's judgment. We agree. Even if the trial court erred by finding that Mother's disruptive conduct has gone on for years, this error would be harmless in light of the other admissible evidence the trial court relied on that establishes Mother's tendency to cause disturbances in E.H.C.'s life. *See Brooks v. Bell*, 1st Dist. Hamilton No. C-970548, 1998 Ohio App. LEXIS 1476, *9 (Apr. 10, 1998) ("In a civil case, a harmless error is one that does not affect the substantial rights of the parties. We hold that the error was harmless because [defendant] presented other competent, credible evidence that the trial court relied on in granting judgment in her favor."). As explained above, she caused disturbances so significant that it warranted calling the authorities and obtaining a cease-and-desist order—and two of E.H.C.'s medical providers indicated that they might not be able to continue treating him if such incidents continued. Moreover, Mother's actions created such concern with respect to a school safety

5

officer that he reached out to E.H.C. to determine whether he was safe—again inflicting considerable distress upon the child.

{¶12} Finally, Mother protests the trial court's finding that E.H.C. is worried that Mother's behavior will disrupt his learning, ability to work a job, and his medical care, claiming a paucity of evidence. But this overlooks Father's testimony that she contacted E.H.C.'s school to obtain his records and that E.H.C. is concerned that Mother will cause disruptions in a quest to obtain his records in the future. Although we see nothing in the record on Mother's behavior with respect to E.H.C.'s workplace, the trial court could infer that Mother's disruptive behavior might spill over to E.H.C.'s work environment consistent with her actions in other similar contexts. Finally, Mother seizes on Father's inability to cite specific examples of how she jeopardized E.H.C.'s care to argue that she never disrupted his medical care. But Father testified that E.H.C.'s anxiety "peaks" in the moments like the incident at the physician's office, including an occasion when the child's blood pressure spiked just upon seeing Mother's car. Indeed, it is easy to see how a doctor's office having to summon the police on a parent would create anxiety in a child. This testimony supports the conclusion that Mother disrupted E.H.C.'s medical care, particularly since E.H.C. suffers from anxiety and Mother's conduct could interfere with E.H.C.'s ability to receive care if she continues antagonizing his providers. The trial court, therefore, did not err by finding that Mother's behavior may disrupt E.H.C.'s learning, ability to work, and his medical care. Mother accordingly fails to show any error in the trial court's factual findings.

B.

{¶13} We turn now Mother's argument that the restraint on her access to E.H.C.'s records does not serve the child's best interest. Father responds that the trial court did not abuse its discretion in restricting Mother's access to E.H.C.'s records because the trial court narrowly tailored its order to avoid undue limitations on Mother's rights.

6

{¶14} The trial court's order does not absolutely prohibit Mother from accessing E.H.C.'s records. It merely (1) requires her to obtain consent before appearing at E.H.C.'s school, medical providers, and workplace when E.H.C. is likely to be present, and (2) precludes her from harassing personnel at those locations to obtain E.H.C.'s records.

{¶15} Mother acknowledges that the trial court order is not an absolute bar on her right to access to E.H.C.'s records, but argues nonetheless that the trial's court order will have the practical consequence of preventing her from accessing E.H.C.'s records. Since Mother may be required to appear in-person to access the records, the reasoning goes, it places E.H.C.'s school, medical provider, and employer as gatekeepers, theoretically stifling her access to records by refusing to consent to her appearance. But even if the school, medical provider, or employer required her to appear in-person to obtain any records, the trial court order does not absolutely bar her from appearing in-person without consent. Mother may appear in-person at these locations so long as it occurs during a time when E.H.C. is not likely to be present.

{¶16} Moreover, the trial court order expressly recognized that Mother has a right to access E.H.C.'s records, and it did not purport to eliminate these rights consistent with R.C. 3109.051(H)(1).

{¶17} In sum, the trial court's order represents a narrow restriction on Mother's access to E.H.C.'s records that is grounded in legitimate concerns regarding E.H.C.'s education, medical care, and employment. We see no abuse of discretion in this minor restraint on Mother's access to E.H.C.'s records.

\* \* \*

{¶18} For the foregoing reasons, we overrule Mother's sole assignment of error, and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.